UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| JUSTO GOMEZ, | ) | CASE NO. 4:06 CV 2186 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) |  AND ORDER |
| T.R. SNIEZEK, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

Before the court is pro se petitioner Justo Gomez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Mr. Gomez, who is currently confined at the Federal Satellite-Low in Elkton, Ohio (F.S.L. Elkton), brings this action against T.R. Sniezek, Warden at the FSL Elkton. Mr. Gomez is seeking an order vacating the judgment entered by a Disciplinary Hearing Officer (DHO), removing all sanctions imposed and the restoration of 40 days Good Credit Time (GCT).

*Background*

On January 17, 2006, Mr. Gomez was awoken by a guard at 7:00 a.m. in his cell at F.S.L. Elkton and directed to report to the Lieutenant's office. Once he arrived at the Lieutenant's

office, he claims he first learned that he needed to provide a random urine sample. Mr. Gomez states that his English language skills are "very limited and he tried to communicate to officer Brannon that he had just . . . used the restroom prior to his arrival." (Pet. at 3.) Officer Brannon allegedly advised Mr. Gomez that he would have two hours within which to provide a urine sample.

After sixty minutes, Mr. Gomez advised that he was prepared to provide a sample. His attempt, however, failed. He made another unsuccessful attempt thirty minutes later. Before attempting a third time, Mr. Gomez asked Officer Brannon if he could be given privacy while providing the sample. His request was denied based on the fact that Officer Brannon needed to observe petitioner while he was providing the sample.

Mr. Gomez alleges that at ten minutes before nine o'clock he was "processed" for his transfer to the Special Housing Unit (SHU). He complains that this did not allow him the full two hour allotment of time he was promised. After he was in the custody of the SHU and inside of his cell, he claims he was immediately able to provide a sample. He alleges that this urine sample tested negative.

An Incident Report was issued and provided to Mr. Gomez on January 17, 2006 at 9:20 a.m. The Unit Disciplinary Committee (UDC) charged him with refusing to provide a urine sample or to take part in other drug abuse testing. In response, Mr. Gomez did not dispute the fact that he failed to provide a urine sample at the time Officer Brannon requested it. He is quoted in the Incident Report as stating, "I took some medication (tylenol etc.) that I purchased from the commissary last night." (Pet.'s Ex.G. at ¶ 17.) The UDC referred the matter to the Disciplinary Hearing Officer (DHO) on the same date the incident report was prepared.

On January 24, 2006, a disciplinary hearing was held and Mr. Gomez waived his right to have a staff representative. The DHO read the charges against petitioner aloud at the hearing and asked whether the statements were true. Mr. Gomez stated that he was unable to provide a sample at the time he was requested to do so.[1]

Based on the greater weight of evidence, the DHO concluded that Mr. Gomez engaged in the prohibited act of refusing to provide a urine sample in violation of Code 110. As the report read, Mr. Gomez was unable to provide a sample after three separate attempts between 7:00 a.m. and 9:00 a.m. The Lieutenant was notified and petitioner was transported to the SHU. The DHO added that petitioner did not provide any medical documentation that would indicate petitioner was physically incapable of complying with Officer Brannon's request. As a result of the DHO's conclusions, the following sanctions were imposed: 60 days disciplinary segregation, disallow 40 days Good Conduct Time, No Visits - 180 days, and No Visitors - 180 days. A copy of the report was delivered to Mr. Gomez on February 14, 2006 at 8:00 p.m.

Mr. Gomez exercised his right to appeal the matter through the Bureau of Prisons (BOP) administrative process. In his appeal he argued that he did not commit the prohibited act because he was unable, not unwilling to provide a urine sample. He added that he was not provided every opportunity to comply with Officer Brannon's request because he was not afforded any privacy nor was he given a full two hour period within which to provide a sample. His appeals were denied through to the final stage of the administrative process. The National Inmate Appeals Administrator, Harrell Watts, advised Mr. Gomez that a review of the disciplinary proceedings

---

[1]Although Mr. Gomez alleges he was able to provide a negative sample once he reached SHU, there is no indication that he brought this to the attention of the DHO during the hearing.

-3-

indicated that F.S.L. Elkton staff substantially complied with Program Statement (P.S.) 5270.07, Inmate Discipline and Special Housing Units. Mr. Watts noted that although Mr. Gomez claims that he was not unwilling, but unable to provide a sample, P.S. 6060.08, Urine Surveillance and Narcotic Identification provides that "an inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period and staff must file an incident report." (Pet.'s Ex. D.) Moreover, Mr. Gomez's request for privacy did not comport with BOP policy, which "directs staff to keep the inmate under direct visual supervision during the two-hour period to eliminate the possibility of diluted or adulterated samples." (Pet.'s Ex. D.) The petition before this court followed Mr. Watts's denial of Mr. Gomez's administrative request for relief through the BOP.

*Analysis*

Mr. Gomez contends that it was not necessary for him to provide medical documentation during the DHO hearing because, for him, this issue is "one of limited privacy which Petitioner is entitled to." (Pet. at 5.) He notes that while P.S. 6060.08 does require direct visual supervision, it also provides that "[s]taff may consider supervising indirectly an inmate who claims to be willing but unable to provide a urine sample under direct visual supervision. For example this might be accomplished by allowing the inmate to provide the sample in a secure, dry room after a thorough search has been made of both the inmate and the room." (Pet.'s Exh. H, P.S. 6060.08, Urine Surveillance and Narcotic Identification, at 4-5.) He argues that at no point did anyone ever acknowledge that he had this option. Moreover, he claims he was misled because Officer Brannon advised him that there was no alternative to direct visual supervision during the process of providing a urine sample.

Mr. Gomez concludes that he did not refuse to provide a urine sample and the BOP disregarded a provision of its own Program Statement. He asks this court to order the removal of Offense Code 110 from his permanent record, the restoration of 40 days GCT and the removal of all sanctions imposed. Finally, he requests reinstatement to his job with UNICOR, which he lost after spending 60 days in the SHU.

*Federal Habeas Relief*
*28 U.S.C. § 2241*

The Sixth Circuit has consistently held that claims asserted by federal prisoners seeking to challenge the execution or manner in which their sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir.1977). Here, the petitioner is in the custody of Warden Sniezek at F.S.L. Elkton and seeks the restoration of GCT to his sentence, thus he has properly asserted his claims under §2241.

*Due Process*

A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether "some evidence" supports the decision. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445- 55 (1985). The court is not permitted to re-weigh the evidence presented to the board. Id. at 455. Prison officials' determinations in disciplinary cases must be made quickly in a highly charged atmosphere, id. at 456, and the "Constitution does not require evidence that precludes any conclusion but the one reached by the disciplinary board." Id. at 457. Therefore, insofar as Mr. Gomez contends that he should not have been charged with or sanctioned for refusing to provide a urine sample he has failed

to state a claim. His contention merely amounts to a claim that the DHO's decision was not supported by the evidence.

Although Mr. Gomez asserts that his due process rights were violated, the requirements of due process are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S.103, 106 (1927). The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. The revocation of good time credits is not comparable to a criminal conviction, Wolff v. McDonnell, 418 U.S. 539, 556(1974), and neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307 (1979), nor any other standard greater than "some evidence" applies in this context. Superintendent, v. Hill, 472 U.S. at 456. Therefore, prisoners facing a loss of good-time credits must be given (1) advance written notice of the disciplinary charges, (2) an opportunity to present witness testimony and other evidence when such allowance is consistent with safety and correctional goals, and (3) a written statement of reasons for the disciplinary action taken. Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir.). See also Allen v. Reese, 52 Fed. Appx. 7, 8 (8th Cir.2002) (unpublished opinion) (holding that *federal* prisoner's right to due process was satisfied, as he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the DHO's decision).

In this case, the record reveals an evidentiary basis for the DHO's decision. First, the incident report indicates that Mr. Gomez was asked to provide a urine sample at 7:00 a.m. From that point until 8:50 a.m. there is no indication that petitioner was denied a beverage or that any medical condition precluded his ability to provide a sample. The fact that the officer started the paperwork

to process Mr.Gomez's transfer at 8:50 a.m. did not interfere with his ability to provide a sample before the incident report was completed at 9:00 a.m. Finally, Mr. Gomez did not dispute that fact that he failed to provide a sample during the relevant waiting period.

Ascertaining whether the "some evidence" standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See Wolff, 418 U.S. at 556; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133-134 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (8th Cir. 1974). The DHO weighed the evidence and found that "the act was committed as charged." Even if Mr. Gomez does not agree with these findings, there is some evidence that he did not provide the sample as requested. Because the DHO's decision is supported by "some evidence" in the record, Mr. Gomez's substantive due process rights were not violated.

With respect to the petitioner's contention that he was not afforded sufficient privacy to provide a sample, or that the BOP failed to comply with its own regulations, there is no mandate that those options be provided under BOP Policy Statement 6060.08 or any other identified policy statement. Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir.1992) (quoting Hudson v. Palmer, 468 U.S. 517, 523 (1984))( prisoners retain"'those rights [that are] not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration.'") Thus, the failure to make testing accommodations does not carry significant due process implications in light of the exigencies existing in the prison environment. See Superintendent, 472 U.S. at 454.

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be

taken in good faith.

>IT IS SO ORDERED.


Dated: January 19, 2007 *s/ James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE